UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CYNTHIA A. DWYER,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              04-CV-377S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


        1.      Plaintiff Cynthia Dwyer challenges an Administrative Law Judge's ("ALJ")

determination that she is not disabled within the meaning of the Social Security Act ("the

Act").   Plaintiff alleges that she has been disabled since May 17, 2000, due to cervical

spine problems and surgery.   Plaintiff contends that her impairment has rendered her

unable to work.  She therefore asserts that she is entitled to payment of disability benefits

under the Act.

        2.      Plaintiff filed an application for disability insurance benefits on March 1, 2001.

Her application was initially denied and the reconsideration phase was bypassed.  Pursuant

to Plaintiff's request, an administrative hearing was held before ALJ Robert T. Harvey on

March 14, 2002, at which time Plaintiff appeared with counsel and presented testimony.

The ALJ considered the case *de novo*, and on April 23, 2002, issued a decision denying

Plaintiff's application for benefits.   On March 25, 2004, the Appeals Council denied

Plaintiff's request for review.   Plaintiff filed the current civil action on May 20, 2004,

challenging Defendant's final decision.[1]

--------

[1]The ALJ's April 23, 2002 decision became the Commissioner's final decision in this case when
the Appeals Council denied Plaintiff's request for review.

3.     On November 18 and 26, 2004, the Government and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court heard oral argument on January 10, 2005, and reserved decision at that time.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.   See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

2

1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."   Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at

146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 16, 20);[2] (2) Plaintiff's right shoulder impingement syndrome, cervical pain syndrome and anterior cervical disc and fusion are "severe" impairments within the meaning of the Act (R. at 16, 20); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 16, 20); (4) Plaintiff retained the residual functional capacity for sedentary work in that she could lift and carry up to ten pounds occasionally, sit for up to six hours, and stand and/or walk for up to two hours in an eight hour workday, but was unable to climb or reach overhead with her right arm, unable to perform repetitive neck motions or crawl, unable to work at unprotected heights, around heavy machinery or in damp or cold conditions, and was limited in her ability to bend and reach in all directions or to push and pull with her upper extremities (R. at 19, 21); and (5) Plaintiff was unable to perform her past relevant work because her former jobs were more than sedentary in their exertional requirements. (R. at 19). Further, the ALJ concluded that given Plaintiff's residual functional capacity,

---

[2] Citations to the underlying administrative record are designated as "R."

there was not a significant erosion of her remaining occupational base.  (R. at 20, 21).

Considering Plaintiff's status as a younger individual, with a limited education, an unskilled

work background, and a residual capacity for sedentary work, the ALJ determined that

Medical-Vocational Rule 201.24 directed a finding of "not disabled."  (R. at 20, 21).

Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the

Act, at any time through the date of his decision, April 23, 2002.  (R. at 20, 21).

10.     Plaintiff's first challenge to the ALJ's decision is that he failed to provide any

basis for rejecting the opinions of her two treating physicians, Dr. Pamela Reed and Dr.

Joseph Kowalski.  Plaintiff notes that, on multiple occasions, her physicians expressed

opinions that she was totally disabled.  In this regard, Plaintiff contends that the ALJ failed

to properly apply the treating physician rule because he summarily rejected the treating

physicians' opinions that the claimant was disabled.

Plaintiff makes specific reference to Dr. Reed's February 21, 2002 physical abilities

evaluation, which was rendered 21 months after Plaintiff's alleged onset of disability and

8 months after her surgery.  (R. at 291).  Therein, Dr. Reed opined that Plaintiff could sit

for four hours, stand and walk for two hours, and occasionally lift and carry items weighing

up to five pounds.  (R. at 291).  She could not, in Dr. Reed's opinion, perform repetitive

simple grasping with her right or left hand, but could use her feet for repetitive motions such

as pushing and pulling.  (R. at 291).  Further, the assessment indicated that Plaintiff could

occasionally squat and bend, but should never crawl, climb or reach, and that she should

avoid working at unprotected heights, around moving machinery, or in environments where

she was exposed to dust, fumes, gases or marked changes in temperature and humidity.

(R. at 291).

In rendering his decision, the ALJ considered Dr. Reed's February 21, 2002 evaluation and found that it was not supported by the objective evidence in the record. (R. at 18). While Plaintiff concedes that there were arguably inadequate medical findings to support Dr. Reed's post-surgical assessment, she nonetheless contends that ample medical findings rendered between Plaintiff's onset date, May 17, 2000, and her surgery, June 4, 2001, support Dr. Reed's restrictive functional assessment.

11.    According to the "treating physician rule,"[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

12.    Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.   Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

13.     At the same time, a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act.  See 20 C.F.R. § 404.1527(e).  This is particularly true when a treating physician renders an opinion of total disability in connection with a claim for workers compensation benefits.  Because there are different statutory tests for disability under workers' compensation statutes and the Social Security Act, an ALJ may reasonably disregard a treating physician's conclusion regarding a plaintiff's disability for workers compensation purposes.  See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); see also Bosley v. Heckler, 879 F. Supp. 296, 304 (W.D.N.Y. 1995).

14.     Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Reed and Dr. Kowalski's opinions in light of the objective medical findings in the record.  As reflected in the ALJ decision, Plaintiff was first evaluated in October 2000 by Dr. Kowalski, who referred her for a cervical MRI that was performed on November 20, 2000.  (R. at 211-12).  The MRI revealed a small posterior and central disc herniation at C5-6 causing mild mass effect over the thecal sac.  (R. at 211-12).  Additionally, at C6-7, there were mild changes of cervical spondylosis with mild disc bulging causing mild effect over the thecal sac.  (R. at 211-12).  On the other hand, the MRI revealed normal intervertebral disks, thecal sac and neural foramina at all the remaining cervical levels, and no cord compression.  (R. at 211-12).

Moreover, at Dr. Kowalski's recommendation, Plaintiff underwent NCV and EMG studies on December 6, 2000, which were within normal limits.  (R. at 190).  Specifically, the studies reflected no evidence of cervical radiculopathy, plexopathy, or entrapment neuropathy from an electrophysiological point of view.  (R. at 190). Based on these results,

Dr. Kowalski opined that the Plaintiff remained temporarily totally disabled.  As previously noted herein, however, the determination of whether a claimant is disabled is reserved to the Commissioner, not a treating physician.  See 20 C.F.R. § 404.1527 (conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act).  Accordingly, it was not improper for the ALJ to acknowledge Dr. Kowalski's medical opinion, but ultimately predicate the disability determination on the objective medical results.

On January 31, 2001, when Plaintiff's neck and shoulder pain worsened, she returned to Dr. Kowalski, who recommended that a discogram be performed.  (R. at 357).  The discogram, which was performed on April 5, 2001, was the first study to reveal distinctly positive findings at the C4-5 and C5-6 levels.  (R. at 215-16).  In addition, a post-discogram CT scan of the cervical spine performed on the same date revealed evidence of annular tearing at the C5-6 level, and possibly at the C6-7 level.  (R. at 278-79).  Based on the results of the discogram and the CT scan, Dr. Kowalski recommended a diskectomy and fusion at C4-5 and C5-6.  (R. at 271).  Plaintiff underwent the surgery without any complications on June 4, 2001.  (R. at 231).  Dr. Kowalski's post-operative reports noted that Plaintiff had a well-healed incision, and could comfortably move her head and neck out of the brace.  (R. at 260-64).  On November 28, 2001, Dr. Kowlaski acknowledged that radiographs of the cervical spine revealed excellent overall alignment and no evidence of instability on flexion/extension.  (R. at 258).  Dr. Kowalski noted that Plaintiff moved her neck quite freely and comfortably during casual conversation but was quite apprehensive during formal testing.  (R. at 258).  Based on his evaluation, Dr. Kowalski was "at a loss to explain her significant neck pain."  (R. at 258).

In this context, the ALJ acknowledged the very restrictive functional assessment

rendered by Dr. Reed in February 2002, and concluded that it was not supported by the objective clinical evidence.  (R. at 18).  This Court notes that Dr. Reed's evaluation appears wholly inconsistent with the substantial objective medical evidence in the record, including the reports rendered by Plaintiff's treating orthopedic surgeon, Dr. Kowlaski.  See 20 C.F.R. § 404.1527(d)(2).  As such, the ALJ was not obligated to defer to Dr. Reed's rather conclusory evaluation.  Under the circumstances, it cannot be said that the ALJ arbitrarily substituted his own judgment for that of the treating physician.  Rather, this Court finds that the ALJ appropriately rejected Dr. Reed's cursory evaluation in favor of the objective medical evidence and substantiated medical opinions in the record.

15.    Plaintiff's second argument is that substantial evidence in the record does not support the ALJ's residual functional capacity assessment.  In particular, Plaintiff argues that the ALJ did not cite any medical evidence in support of his determination.  Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error.  The decision contains an adequate discussion of medical evidence supporting the ALJ's residual functional capacity assessment, including the informed medical opinions of  Dr. Kowalski and Dr. Frank Luzi, the "consulting physician" who examined Plaintiff on behalf of her insurance carrier.  (R. at 17-19, 191-93).    Consequently, this Court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence in the record.

16.    Plaintiff's final argument is that the ALJ's use of the Medical Vocational Guidelines ("the GRIDS") as a framework to decide that there existed a significant number of jobs in the national economy which plaintiff could perform was improper.  Specifically, Plaintiff argues that her "nonexertional" impairments, impairments involving climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and

feeling, significantly limit her ability to perform work at the sedentary level, a complexity that is not reflected in GRIDS.

A full range of sedentary work "requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." Social Security Ruling ("SSR") 96-9p.   A job is considered sedentary if walking and standing are required occasionally, or no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.   SSR 96-9p. Unskilled sedentary work also includes "nonexertional" activities, which require capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.   SSR 96-9p. A significant nonextertional limitation - for example, an individual's inability to handle small objects with both hands - can result in a significant erosion of the unskilled sedentary occupational base.   See, e.g., SSR 96-9p.   Under such  circumstances, the Commissioner must  introduce testimony of a vocational expert or other similar evidence establishing that jobs exist in the national economy which the claimant can perform, and cannot rely solely on GRIDS.   Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). On the other hand, where an additional restriction has little effect on the occupation base, the conclusion directed by the vocational tables would not be affected, and the Commissioner need not introduce additional vocational evidence.   See SSR 83-14.

As previously noted herein, the ALJ determined in the instant case that Plaintiff was able to perform the full range of sedentary work except for her inability to work at unprotected heights or around heavy machinery, to climb ropes, ladders and scaffolds, to do any overhead reaching with her right arm, to do any repetitive neck motions or crawling, to be exposed to cold or dampness, or to do anything more than occasional bending, reaching in all directions and pushing and pulling with her upper extremities.  Considering

these limitations in the context of traditional sedentary work, it cannot be said that these nonexertional limitations are significant enough to erode Plaintiff's occupational base.  For example, limitations on the ability to push or pull, postural limitations, or restrictions related to climbing, crouching or crawling would not significantly erode the unskilled sedentary base, because those activities are not generally encompassed in sedentary work.  SSR 96-9p.  Similarly, few unskilled sedentary occupations require work in extremely cold, damp, humid or otherwise hazardous environments.  SSR 96-9p.  Accordingly, this Court finds that the ALJ was not required to enlist the aid of a vocational expert to establish that jobs exist in the national economy that Plaintiff could perform.

17.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions rendered therefrom.  It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all of the medical evidence, including Plaintiff's treating physicians, and appropriately relied on GRIDS in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Accordingly, finding no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to

close this case.

   SO ORDERED.


Dated: September 16, 2005
   Buffalo, New York


        /s/William M. Skretny  
         WILLIAM M. SKRETNY
        United States District Judge